UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENZO BIOCHEM, INC. et al.,                  :

            Plaintiffs,         :

vs.                                         :    02-CV-8448 (RJS)
                                                 ECF Case
AMERSHAM PLC, et al.,                       :

            Defendants,         :

and                                         :

YALE UNIVERSITY,                            :

            Nominal Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AMERSHAM'S STATEMENT PURSUANT TO LOCAL RULE 56.1**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Amersham plc and Amersham Biosciences (collectively, "Amersham") submit the following statement of material facts as to which there is no genuine issue to be tried.

    I.    COUNT I – BREACH OF CONTRACT CLAIM

1.    Enzo Diagnostics, Inc. and Amersham International entered into a Distributorship Agreement in February of 1995 (the "Agreement").  (Ex. 1.)[1]

2.    The Agreement provides the following definition of "PRODUCT" -- "PRODUCT means an individual reagent or combination of reagent (kit) that are, individually or combined, covered by ENZO PATENTS (EXHIBIT A) as listed in EXHIBIT B."  (Ex. 1 at 1.)

---

[1] Except where otherwise noted, exhibits referenced herein are attached to the Declaration of Matthew M. Wolf in Support of Amersham's Motion for Summary Judgment.

3. The Agreement further provides that "PRODUCTS covered by this agreement are listed in Exhibit B attached hereto." (*Id.* ¶ 3.1.)

4. Exhibit B to the Agreement lists 36 Products by name and catalog number, provides a short description of each, and gives individual "transfer prices" to be paid to Enzo by Amersham.  (Ex. 1 at Tab B (Agreement).)

5. The Agreement further states that additional products can be added to Exhibit B only by mutual consent of the parties:  "Both Enzo and Amersham must agree to additions to, deletions from or modifications of PRODUCTS in Exhibit B before such additions, deletions or modifications are incorporated here." (Ex. 1 ¶ 3.2 (Agreement).)

6. Amersham was marketing and selling cyanine dye-labeled nucleotides, which were not listed on Exhibit B, at least as early as 1995.  (Ex. 29 (2/10/1998 Letter from Long to Rabbani (AM005737)).)

7. Enzo knew of Amersham's sale of fluorescent probes, which were not listed on Exhibit B, by at least by January 1996.  (Ex. 12 (1/12/1996 Fax from Rabbani to Michael Evans (E23009)).)

8. Enzo filed the present suit more than six years after it learned of Amersham's sale of products that were not listed Exhibit B.  (Dkt. 1 (Original Compl.).)

9. Enzo alleged in its complaint that Amersham breached the Agreement by engaging in certain activities with respect to the following categories of products: "(i) conjugated alkaline phosphatase products and detection systems"; (ii) "cyanine labeled nucleotides"; and (iii) "sequencing kits and sequencing kit components."  (Second Am. Compl. ¶ 58 (Ex. 39 and Dkt. 70).)

10. None of those categories of products -- *i.e.,* "(i) conjugated alkaline phosphatase products and detection systems"; (ii) "cyanine labeled nucleotides"; or (iii) "sequencing kits and sequencing kit components" -- were listed on Exhibit B.  (*See* Ex. 1 at Tab B (Agreement).)

11. Enzo did not allege in its complaint that Amersham breached the "best efforts" requirement of section 8.1 of the Agreement. (*See generally* Second Am. Compl. at Ex. 39 and Dkt. 70.)

12. Enzo has never amended its complaint to include the allegation that Amersham breached the "best efforts" requirement of section 8.1 of the Agreement. (Second Am. Compl. (Ex. 39 and Dkt. 70).)

13. Amersham made the Exhibit B products available to consumers, by listing them in Amersham's catalogs and including them in Amersham's marketing and promotional activities. (Ex. 5 (Long Dep. at 80).)

II. COUNTS III - VI -- TORT CLAIMS

14. Although the parties exchanged drafts of a proposed "Amendatory Agreement," they could not come to final agreement on its terms. (Ex. 17 (8/22/2000 Letter from Fedus to Rollins (E2286-90)); Ex. 18 (2/27/2001 Letter from Long to Rabbani (AM006001)); Ex. 19 (AM 006180).)

15. The Amendatory Agreement was never executed. (Second Am. Compl. ¶ 74(a) (Ex. 39 and Dkt. 70); Ex. 30 (Enzo's Response to Interrogatory No. 5) at 10.)

16. Amersham decided not to enter into the Amendatory Agreement because of Enzo's demand that Amersham cease all research in the area of labeled nucleotides. (Ex. 14 (8/7/1998 Letter from Long to Rabbani (AM005727); Ex. 15 (4/6/1999 Fax from Rabbani to Evans (AM005729-31)); Ex. 18 (2/27/2001 Letter from Long to Rabbani (AM006001)).)

17. Amersham approached Yale in early 1995 concerning obtaining a potential license to the Ward patents. (Ex. 30 (Enzo's Response to Interrogatory No. 5) at 11; Ex. 34 (10/7/1999 Letter from Rabbani to Long (AM 005017-24)).)

18. Amersham's discussions with Yale concerning a possible license to the Ward patents were unsuccessful. (*See generally* Ex. 30 (Enzo's Response to Interrogatory No. 5) at 11.)

19. Enzo knew by at least October 7, 1999 -- more than three years before it filed its complaint -- that Amersham had approached Yale concerning a potential license to the Ward patents. (*See* Ex. 34 (10/7/1999 Letter from Rabbani to Long (AM 005017-24)); Dkt. 1 (Orig. Compl.).)

20. The complaint identifies no specific basis for Enzo's unfair competition under federal law, *i.e.* the Lanham Act claim. (*See generally* Second Am. Compl. ¶¶ 77-81 (Ex. 39 and Dkt. 70).)

21. Enzo's president, Barry Weiner, testified that the Lanham Act claim was based upon the fact that Amersham allegedly marketed "products utilizing Enzo technology covered under issued patents" without listing Enzo's patents on Amersham's marketing materials. (Ex. 36 (Weiner Dep. Tr. 39).)

22. Amersham's purchase of cyanine dye-labeled nucleotides from PerkinElmer predates PerkinElmer's Agreement with Enzo. (*See* Ex. 11 (4/26/1995 Fax from Alan W. Seadler to Rabbani (AM005045)); Ex. 29 (2/10/1998 Letter From Long to Rabbani (AM005737)); Dkt. 161 ¶¶ 12, 28 (Burczak Decl.).)

23. Enzo knew of Amersham's purchase of cyanine dye-labeled nucleotides from PerkinElmer by at least July of 1999 -- more than three years before it filed the present action. (*See* Ex. 32 (7/23/99 Letter from Rabbani to Long (AM004639-40)).)

24. Amersham communicated its view to Enzo concerning the invalidity of Enzo's patents before entering the Agreement. (*See* Ex. 10 (E00022587-01).)

Dated: December 21, 2012                    Respectfully submitted,


/s/ Maxwell Preston          .
Maxwell Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
T: 212-715-1000
F: 212-715-1399

Matthew M. Wolf
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
T: 202-942-5000
F: 202-942-5999

Jennifer A. Sklenar
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, *CA* 90017-5844
T: 213-243-4027
F: 213-243-4199

*Attorneys for Defendants Amersham plc and Amersham Biosciences*