# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ENZO BIOCHEM, INC. et al., | : |
| Plaintiffs, | : |
| vs. | : |
| AMERSHAM PLC et al., | : |
| Defendants, | : |
| and | : |
| YALE UNIVERSITY, | : |
| Nominal Defendant. | : |

02-CV-8448 (RJS)
ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM IN SUPPORT OF AMERSHAM'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................1

II.   JUDGMENT SHOULD BE ENTERED ON THE NON-PATENT CLAIMS..................2

    A.   CLAIM 1 -- BREACH OF CONTRACT ...........................................................3

        1.   Alleged breach of the Enzo-Amersham 1995 Agreement ..........................3

            a.   Cy Dye Products are not subject to the 1995
                Agreement. ...................................................................................3

            b.   Enzo's labeling claim as to Exhibit B products is
                untimely..........................................................................................3

            c.   Enzo's "best efforts" claim is untimely and legally
                flawed...........................................................................................4

        2.   Alleged breach of a purported "Agreement" with NEN............................5

    B.   CLAIM 5 -- TORTIOUS INTERFERENCE WITH CONTRACT......................7

    C.   CLAIMS 3 AND 4 -- UNFAIR COMPETITION ...................................................8

    D.   CLAIM 6 -- FRAUDULENT INDUCEMENT OF CONTRACT ......................10

III.  CONCLUSION .................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*106 Mile Transp. Assocs. v. Koch*,
    656 F. Supp. 1474 (S.D.N.Y. 1987) ...................................................................................2

*Alicea v. City of New York*,
    145 A.D.2d 315, 534 N.Y.S.2d 983 (N.Y. App. Div. 1988) ..................................................7

*Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*,
    730 F. Supp. 1209 (E.D.N.Y. 1990) ...................................................................................9

*BDG Oceanside, LLC v. RAD Terminal Corp.*,
    14 A.D.3d 472, 787 N.Y.S.2d 388 (N.Y. App. Div. 2005) ...................................................6

*Beckman v. U.S. Postal Serv.*,
    79 F. Supp. 2d 394 (S.D.N.Y. 2000) ..................................................................................2

*Beecher v. Feldstein*,
    8 A.D.3d 597, 780 N.Y.S.2d 153 (N.Y. App. Div. 2004) .....................................................7

*Best Cellars, Inc. v. Wine Made Simple, Inc.*,
    320 F. Supp. 2d 60 (S.D.N.Y. 2003) ..................................................................................9

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) ............................................................................................................8

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    No. CV 11-3677 ARL, 2013 WL 1209041 (E.D.N.Y. Mar. 25, 2013) .................................8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ...........................................................................................................10

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996) .........................................................................................................8

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
    66 N.Y.2d 38 (1985) ...........................................................................................................7

*Gameologist Group, LLC v. Scientific Games Int'l, Inc.*,
    838 F. Supp. 2d 141 (S.D.N.Y. 2011) ................................................................................9

*Highland Capital Mgmt. LP v. Schneider*,
    198 Fed. Appx. 41 (2d Cir. 2006) ......................................................................................7

*Inside Out Prods., Inc. v. Inside Out Prods., Inc.*,
    No. 90 CIV. 7233 (JSM), 1995 WL 375927 (S.D.N.Y. June 23, 1995) ...............................4

*John Paul Mitchell Sys. v. Pete-N-Larry's, Inc.*,
    862 F. Supp. 1020 (W.D.N.Y. 1994) ...................................................................................7

*Lamport v. 4175 Broadway, Inc.*,
    6 F. Supp. 923 (S.D.N.Y. 1934)............................................................................................8

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    No. 11 CIV. 681 KBF, 2013 WL 1651624 (S.D.N.Y. Apr. 15, 2013) ...................................4

*Lyman v. CSX Transp., Inc.*,
    364 Fed. Appx. 699 (2d Cir. 2010) ..................................................................................2, 4

*McDonald's Corp. v. McBagel's, Inc.*,
    649 F. Supp. 1268 (S.D.N.Y. 1986).....................................................................................9

*Mocca Lounge, Inc. v. Misak*,
    94 A.D.2d 761, 462 N.Y.S.2d 704 (N.Y. App. Div. 1983) ...................................................5

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
    813 F. Supp. 2d 489 (S.D.N.Y. 2011) ..................................................................................5

*Silber v. New York Life Ins. Co.*,
    92 A.D.2d 436, 938 N.Y.S.2d 46 (N.Y. App. Div. 2012) .....................................................6

*Silverstein v. Penguin Putnam, Inc.*,
    522 F. Supp. 2d 579 (S.D.N.Y. 2007)................................................................................10

*Strauss Paper Co., Inc. v. RSA Exec. Search, Inc.*,
    260 A.D.2d 570, 688 N.Y.S.2d 641 (N.Y. App. Div. 1999) .................................................5

*Strauss v. Belle Realty Co.*,
    98 A.D.2d 424, 469 N.Y.S.2d 948 (N.Y. App. Div. 1983),
    *aff'd*, 65 N.Y.2d 399 (1985) .....................................................................................5, 6, 7

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    576 F. Supp. 2d 460 (S.D.N.Y. 2007) .................................................................................2

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    8 N.Y.3d 422 (2007)............................................................................................................8

**STATUTES AND RULES**

Lanham Act § 43(a)(1)(A) (codified at 11 U.S.C. 1125 (a)(1)(A))..............................................10

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 766 cmt h. ...............................................................7

Defendants Amersham plc and Amersham Biosciences ("Amersham") respectfully submit this reply memorandum in support of their motion for summary judgment on the remaining claims asserted by Enzo Biochem, Inc. and Enzo Life Sciences, Inc. ("Enzo").

## I.    INTRODUCTION

In its Opposition, Enzo concedes by what it contests -- and, more importantly, what it does not -- that the case it brought and litigated through the Court's deadline for amending contentions is over. Enzo has lost. What is left amounts to a wholly untimely, exasperating, and costly game of liability theory Whac-A-Mole.

From the outset of this case, Enzo's claims against Amersham centered on its patent infringement allegations as to certain categories of products (such as Cy Dye nucleotides) not part of the parties' 1995 Distributorship Agreement. Enzo also asserted various contract and tort claims, derivative of and dependent upon its infringement claim. The Court ruling in Amersham's favor on the patent infringement claim gutted those other claims. Well past midnight, Enzo has thus shifted to other theories -- never pled -- in a futile effort to get something -- anything -- in front of a jury.

Specifically, Enzo now asserts allegations of wrongdoing based upon an entirely different set of products nowhere mentioned in the complaint -- the products that *are* expressly listed on Exhibit B to the parties' Agreement -- even though it has been aware of Amersham's activities as to those products (sold between 1995 and 2003) for more than ten years. Enzo also now tries to argue breach of a newly identified "contract," *i.e.*, an alleged 1999 agreement between Amersham and NEN, claiming to be a third party beneficiary.[1]

The untimely theories -- not disclosed until after the 2005 deadlines imposed by the Court -- should not be permitted.

---

[1]To assist the Court as it wades through the history of Enzo's contentions, attached as Exhibit A to the Declaration of Jennifer Sklenar filed concurrently herewith ("Sklenar Decl.") is a chart setting forth the "evolution". It should be emphasized that, prior to moving for summary judgment on the non-patent claims, Amersham asked Enzo to identify specifically what remained for adjudication. Sklenar Decl., Ex. E. Enzo refused to do so (Sklenar Decl., Ex. B) and waited until Amersham filed its renewed motion to drop and/or narrow many of its contentions, in many instances in an apparent effort to avoid statutes of limitation, thereby forcing Amersham to spend much of its opening brief and its Local Rule 56.1 separate statement of material facts addressing issues no longer contested. Relatedly, Enzo's own 56.1 statement fails to identify many of the purported (and untimely) issues that it contends through its opposition brief, in conclusory fashion, remain to be tried.

## II.   JUDGMENT SHOULD BE ENTERED ON THE NON-PATENT CLAIMS

In February 2005, Judge Sprizzo gave Enzo a clear and unambiguous procedural deadline: any amended liability contentions had to be served by March of that year and he would not thereafter "entertain anything further."  (Dkt. 296 Ex. 21 (2/7/2005 Hrg. Tr.) at 10; Dkt. 296 Ex. 22 (3/4/2005 Hrg. Tr.) at 4-13.))  He also cautioned Enzo that it would not be permitted to assert any theories not contained in its complaint absent express leave to amend.[2]  This deadline coincided with the end of the lengthy discovery period in this case, which closed May 2005.  (Dkt. 113.)  Enzo sought and was afforded two subsequent discovery periods limited to its purported need for additional discovery to oppose summary judgment motions.  Nonetheless, almost all of Enzo's Opposition is addressed to post-deadline theories.

Remarkably, Enzo concedes that its current theories were not disclosed until at least June of 2005 but discounts any prejudice to Amersham because "Amersham had eight years [*i.e.,* from June 2005 to present] to conduct discovery on these supposedly 'new theories.'"  (Dkt. 309 (Enzo Opp. Br.) at 17.)  In so doing, Enzo simply disregards the March 2005 deadline for supplemental contentions, the May 2005 fact discovery close, and the stay of the case for several years after 2005.

There is simply no reason in this case for Enzo to be permitted to assert liability theories that were not raised prior to the Court's deadlines.  *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) (Sullivan, J.) ("This Circuit has consistently found prejudice and denied amendments where discovery has already been completed."); *Lyman v. CSX Transp., Inc.*, 364 Fed. Appx. 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1183, at 23 n.9 (3d ed. 2004))); *see also Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("[P]laintiff must set forth facts [in the complaint] that will allow each party to tailor its discovery to prepare an appropriate defense.").[3]

---

[2] (Dkt. 296 Ex. 24 (7/18/2007 Hrg. Tr.) at 281-82 ("[The] [p]leading sets forth your claim.  You can't just go and say breach of contract and then argue every possible breach of contract you can think of at the time of trial. . . .  Otherwise, we'd have no purpose to seek leave to amend if you could just amend willy nilly a pleading . . . ."); *id.* at 312 ("It's not what you argue, it's what's in your complaint.").)

[3] Even if Enzo were permitted to amend its complaint now, its new theories would not relate back to the allegations previously pled and would raise manifest statute of limitations issues.  *See, e.g., 106*

(Footnote Cont'd on Following Page)

2

A.      CLAIM 1 -- BREACH OF CONTRACT

  1.      **Alleged breach of the Enzo-Amersham 1995 Agreement**

    a.      **Cy Dye Products are not subject to the 1995 Agreement.**

Until Enzo's recent filing, the crux of its breach of contract claim -- indeed, its state law and Lanham Act claims in general -- had always been focused on Amersham's activities as to products **not** specifically listed in the parties' agreement, most notably Cy Dye products. Enzo now concedes this issue (*see* Dkt. 309 at 8 n.5) and judgment should be entered.

Even absent the concession, the unambiguous language of the contract confirms that the only PRODUCTS subject to the Agreement's terms are only those explicitly listed on Exhibit B: "PRODUCTS covered by this agreement are listed in EXHIIT B attached hereto" and "[b]oth ENZO and AMERSHAM must agree to such additions to, deletions from or modifications of PRODUCTS in EXHIBIT B before such additions, deletions or modifications are incorporated therein." (Dkt. 296 Ex. 1 at ¶¶ 3.1, 3.2.) Enzo has not come forward with any evidence that the Cy Dye products and other products listed in the complaint were set forth on Exhibit B or added by agreement of the parties. (Dkt. 296 Ex. 30 at 4-12; Dkt. 309.) Enzo's long held position -- that other products are subject to the Agreement if they are covered by patents that Enzo owned or licensed -- ignores the unambiguous contract language and, in any event, was eviscerated by the Court's patent summary judgment ruling (which Enzo does not dispute). (*See* Dkt. 280 at 19; Dkt. 309 at 8 n.5.)

    b.      **Enzo's labeling claim as to Exhibit B products is untimely.**

The Court should reject as untimely Enzo's argument that Amersham breached the 1995 Agreement by failing to properly label products "identified on Exhibit B." (Dkt. 309 at 8-9.) Remarkably, Enzo raised this issue for the first time on summary judgment. Indeed, nowhere in

---

(Footnote Cont'd From Previous Page)
*Mile Transp. Assocs. v. Koch*, 656 F. Supp. 1474, 1487 (S.D.N.Y. 1987) ("To decide whether relation back is appropriate, the Court must focus on the notice given by the factual situation set forth in the original pleading. If the facts in the original pleading do not provide defendant with notice of facts out of which the time-barred claim arises then relation back is inappropriate." (citations omitted)). In addition, assuming the new claims were not dismissed immediately on limitations grounds, Amersham would need to reopen discovery to explore these new theories and even then the prejudice to Amersham would be palpable as the events in question occurred *more than fifteen years ago.*

Enzo's operative complaint or its relevant interrogatory responses[4] does it mention any alleged breach of the paragraph 11.1 labeling requirement based upon products listed on Exhibit B. Enzo never disclosed this allegation despite the fact that it had the evidence upon which it relies no later than March 2003. (Compare Dkt. 70 at ¶¶ 32-38, 56-58, with Dkt. 296 Ex. 30 at 4-9.) Enzo's new allegation is unquestionably improper.[5] *Lyman*, 364 Fed. Appx. at 701.

### c.   Enzo's "best efforts" claim is untimely and legally flawed.

Enzo also makes the untimely argument that Amersham violated the paragraph 8.1 "best efforts" requirement of the Enzo-Amersham agreement by (1) not listing all of the Exhibit B products in its catalogs; (2) favoring sales of Cy Dye labeled nucleotides over Exhibit B products; and (3) telling third parties that Enzo's patents were invalid. Once again, none of these alleged activities were identified in the complaint nor is there any discussion of a purported breach of the 8.1 "best efforts" provision. (Dkt. 70 at ¶¶ 32-38, 56-58.) Furthermore, none of these allegations were raised at all by Enzo prior to the close of fact discovery.[6]

Even if it were to be considered, Enzo's "best efforts" argument utterly fails because there is absolutely nothing in Paragraph 8.1 that would require Amersham to "treat Enzo's Products at least as well as [] Cy Dye products." (Dkt. 309 at 11.) Even if Amersham somehow did not market the products similarly (which Enzo has not established), the absence of this requirement in the Agreement is fatal to Enzo's claim. *See Inside Out Prods., Inc. v. Inside Out Prods., Inc.*, No. 90 CIV. 7233 (JSM), 1995 WL 375927, at *5 (S.D.N.Y. June 23, 1995).

---

[4] Even in Enzo's interrogatory responses served after the close of fact discovery, the only purported labeling violation were for "two cy dye labeled nucleotide products" -- *i.e.*, products not on Exhibit B. (Dkt. 296 Ex. 30 at 8-9.)

[5] It is difficult for Amersham to even address this point on the merits now given the fact that this issue was never previously raised, the passage of time, and the retirement of key personnel.

[6] This claim was also waived given Enzo's knowledge of those activities and election not to act during the term of the Agreement. "[T] he doctrine of waiver will preclude a party with actual knowledge of a breach from bringing suit on that breach years later, if the party both elects to continue performance and fails to give notice of the breach." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11 CIV. 681 KBF, 2013 WL 1651624, at *7 (S.D.N.Y. Apr. 15, 2013). *Luitpold Pharmaceuticals* is remarkably similar to the present case; the Court granted summary judgment on a similar "best efforts" argument because the claimant, like Enzo, was aware of the purported breach during the contract term and chose not to terminate or sue during the contract term for damages. *Id.* at *9-10.

Lastly, Enzo's assertion that Amersham breached the "best efforts" provision because an Amersham employee, Dr. Rollins, told third parties that certain of Enzo's patents were invalid also fails to raise a material factual dispute. The paragraph 8.1 best efforts provision sets out certain promotion and advertising requirements for ***PRODUCTS*** listed in the Agreement and has nothing to do with whether Amersham personnel were permitted to communicate views on ***patents***.[7] (Dkt. 296 Ex. 1 at ¶ 8.1.) Enzo's conclusory assertion that Dr. Rollins' patent views somehow impacted the sale of Exhibit B products requires several speculative leaps in logic. Specifically, Enzo has presented no evidence that: (i) Dr. Rollins' beliefs were communicated to any customers (the only entity identified as receiving such views was Amersham's merger partner as part of due diligence -- Dkt. 312 Ex. 142 at 269:11-20); (ii) his views had any relationship to any Exhibit B product; or (iii) his views affected any customer's willingness to buy any Exhibit B product.

### 2.  Alleged breach of a purported "Agreement" with NEN

The Court should also reject as untimely Enzo's contention that Amersham breached an alleged Agreement with NEN to which Enzo was purportedly an intended third party beneficiary. This is yet another argument that has never been raised previously in this case. Indeed, every mention of breach of contract in the complaint confirms that the only agreement that Amersham was alleged to have breached was the Enzo-Amersham 1995 Distributorship Agreement. (*See* Dkt. 70 ¶¶ 31-39, 54-63.) There is nothing in any of Enzo's interrogatory responses that provided any notice that Enzo believed that NEN and Amersham had formed an agreement to Enzo's benefit. (*See* Dkt. 312, Ex. 169; Sklenar Decl., Ex. C.)

This new theory of purported liability also fails on the merits. "A party, claiming to be a third-party beneficiary, has the burden of demonstrating that he has an enforceable right." *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 427, 469 N.Y.S.2d 948, 950 (N.Y. App. Div. 1983) (citation omitted), *aff'd*, 65 N.Y.2d 399 (1985). That party "must establish (1) the existence of a valid and

---

[7] If, as Enzo argues, the "best efforts" provision in the Enzo-Amersham Agreement somehow would cover other vague activities not explicitly recited in the guidelines for the provision, the provision would likely be unenforceable. *See Mocca Lounge, Inc. v. Misak*, 94 A.D.2d 761, 763, 462 N.Y.S.2d 704, 706-07 (N.Y. App. Div. 1983); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 516 (S.D.N.Y. 2011); *Strauss Paper Co., Inc. v. RSA Exec. Search, Inc.*, 260 A.D.2d 570, 571, 688 N.Y.S.2d 641, 642-43 (N.Y. App. Div. 1999).

binding contract between other parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *BDG Oceanside, LLC v. RAD Terminal Corp.*, 14 A.D.3d 472, 473, 787 N.Y.S.2d 388, 390 (N.Y. App. Div. 2005).

As a threshold matter, Enzo cannot demonstrate there was a valid contract between Amersham and NEN.  To make such a determination, a court will examine "the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Silber v. New York Life Ins. Co.*, 92 A.D.2d 436, 439, 938 N.Y.S.2d 46, 50 (N.Y. App. Div. 2012) (citation omitted).  Nothing in the letters pointed to by Enzo suggest that NEN was trying to form a contract with Amersham.[8]  (*See* Dkt. 312 at Exs. 6 and 151.)  Instead, they reflect that NEN believed it was required to send such letters to Amersham based upon NEN's 1999 Agreement with Enzo.  Enzo has not come forward with any evidence that Amersham acknowledged these terms (as requested).  Regardless, Enzo's own 1995 Agreement with Amersham precluded Enzo from entering into any Agreement that would bind Amersham, running counter to Enzo's contention that Amersham was subject to Enzo's sales restrictions as a result of the Enzo-NEN Agreement.  (*See* Dkt. 309 at 7; Dkt. 296 (Wolf Decl.) at Ex. 1, ¶ 2.1 ("[N]either party shall conclude any contract or agreement or make any commitment, representation or warranty which binds the other party or otherwise acts in the name of or on behalf of the other party.").)

Moreover, even if contracting parties specifically intend to confer benefits on a third party, "not all consequential damages which flow from a breach of the contract are recoverable by the third party." *Strauss*, 98 A.D.2d at 427.  Rather, "[t]he contract must evince a discernible intent to allow recovery for the specific damages to the third party that result from a breach thereof before a

---

[8] Enzo also asserts that Enzo obtained additional promises from NEN specifically regarding its sales to Amersham through a side letter incorporated into the Enzo-NEN 1999 Agreement.  (Dkt. 309 at 7 n.4.)  Enzo cites no evidence that Amersham ever received notice of, or was aware of, its contents. (*See id.*)

cause of action is stated." *Id.*; *see also Alicea v. City of New York*, 145 A.D.2d 315, 317, 534 N.Y.S.2d 983, 985 (N.Y. App. Div. 1988). Even assuming *arguendo* that NEN's unacknowledged letters to Amersham somehow formed an "agreement," nothing in the letters evinced a discernible intent to allow recovery for any damages to Enzo that resulted from a breach thereof. Accordingly, Enzo cannot demonstrate that it has any enforceable rights as a purported third party beneficiary. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985).

### B.  CLAIM 5 -- TORTIOUS INTERFERENCE WITH CONTRACT

Amersham is also entitled to summary judgment on Enzo's claim that Amersham engaged in "tortious interference" with Enzo's 1999 Agreement with NEN. Enzo's theory with respect to this claim has also shifted and is now muddled at best. Although Enzo previously contended that Amersham's act of *purchasing* Cy Dye products from NEN constituted tortious interference, it has now apparently focuses only on Amersham's act of *selling* products acquired from NEN to other companies for use in the field of diagnostics. (Compare Dkt. 312 Ex. 169 at 11-12, with Dkt. 309 at 18.)

Enzo's allegation (as presently articulated) is facially deficient as it lacks *any* evidence on an essential element of the claim--*inducement*. For a prima facie claim, the accused tortfeasor must have intentionally persuaded or induced the contracting party (here NEN) to take some action that constituted a breach. *See Beecher v. Feldstein*, 8 A.D.3d 597, 598, 780 N.Y.S.2d 153, 154 (N.Y. App. Div. 2004) ("To impose liability, a defendant must *induce* or intentionally *procure* a third-party's breach of its contract with the plaintiff and not merely have knowledge of its existence." (emphasis added)); *Highland Capital Mgmt. LP v. Schneider*, 198 Fed. Appx. 41, 46 (2d Cir. 2006); *see also* Restatement (Second) of Torts § 766 cmt. h. Yet, Enzo's claim is not based on anything that Amersham caused NEN to do. Instead, Enzo's complaint is that Amersham itself did not agree to operate within the terms of an agreement to which it was never a party and never assented. Such conduct, as a matter of law, does not constitute tortious interference with contract. *See John Paul*

*Mitchell Sys. v. Pete-N-Larry's, Inc.*, 862 F. Supp. 1020, 1029 (W.D.N.Y. 1994); *see also Lamport v. 4175 Broadway, Inc.*, 6 F. Supp. 923, 924 (S.D.N.Y. 1934).[9]

### C.    CLAIMS 3 AND 4 -- UNFAIR COMPETITION

Enzo has once again shifted to different theories not timely disclosed.  Enzo previously contended that Amersham committed unfair competition by conduct such as (i) deciding not to enter into an amendatory agreement with Enzo that would include Cy Dye products and (ii) purchasing products from PerkinElmer.  (*See* Dkt. 70 ¶¶ 41, 74.)  After Amersham's opening brief detailed why each of these arguments fail as a matter of law and/or are time barred, Enzo abandoned them in favor of new theories nowhere disclosed.  (*See* Dkt. 312 Ex. 169 at 3, 9-12.)  Enzo now claims that Amersham committed unfair competition by (i) misappropriating Enzo's "property rights" and (ii) reverse passing off.  (Dkt. 309 at 20-23.)

Even if these theories were considered, they fail to raise a genuine factual dispute.  Enzo no doubt now tries to find a property right in "products and related proprietary information *(whether or not patented)*" (*Id.* at 21) (emphasis added) because the Court has disposed of Enzo's patent claim.  (*See* Dkt. 280 at 10-12, 19.)  Yet, Enzo cites no authority that state law affords an intellectual property right not cognizable under federal patent law.  Any such claim would be preempted by federal patent laws.  *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167-68 (1989) (state law prohibiting the copying of unpatented boat hulls was preempted); *see also Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. CV 11-3677 ARL, 2013 WL 1209041, at *7

---

[9] Enzo has also failed to come forward with any evidence as to other elements of a tortious interference claim.  As explained by PerkinElmer/NEN, NEN never breached its contract with Enzo.  (PerkinElmer Mot. For Summ. J. at 7-14, 16-17, *Enzo Biochem, Inc. v. PerkinElmer, Inc.*, No. 1:03-cv-03817, ECF No. 94.)  Moreover, Enzo completely discounts, for purposes of the intent requirement, that Amersham's relationship with NEN *predated* the entry of Enzo's agreement with NEN and that Amersham never assented to having its sale of Cy Dye products governed by *any* contract with Enzo.  (Dkt. 295 (Amersham Opening Br.) at 14-15.)  Therefore, even if, contrary to the evidence presented, there was any inducement by Amersham, "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." *Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996).  Amersham had such an economic interest here by virtue of its preexisting business relationship with NEN and there certainly has been no showing of malice or illegality.  *Cf. White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 425 (2007) ("satisfied that the [economic interest] defense applies when the tortfeasor has a preexisting legal or financial relationship with the breaching party" although not present in the case before the court).

(E.D.N.Y. Mar. 25, 2013).

Similarly, Enzo has not come forward with any evidence that the Cy Dye products represent its "skill, expenditure and labor," citing only irrelevant provisions in its 1995 and 1999 agreements with Amersham and NEN, respectively, claiming that they show that Enzo "is the author of the concepts embodied in" and "commissioned" certain unspecified "reagents."  (Dkt. 309 at 22-23.) This argument is pure fantasy and unsupported by any factual evidence.  Among other things, (i) Enzo did not previously disclose that it believed that it originated the Cy Dye products in response to an interrogatory squarely on point (Dkt. 312 Ex. 169 at 3); (ii) the 1995 Enzo-Amersham Agreement contains no mention of the Cy Dye products whatsoever (Dkt. 296 at Ex. 1); and (iii) Enzo itself has admitted that Cy Dye products were being sold prior to its entry of the 1999 Enzo-NEN agreement (Dkt. 309 at 4-5; *see also* Dkt. 312 Ex. 6).

Enzo also argues that "[a]t the minimum, a genuine issue of fact is raised as to whether Amersham violated the research only restriction by selling its products and services to VGI and ABI."  (Dkt. 309 at 21.)  This argument was not even disclosed until after the close of discovery (*see* Dkt. 312 Ex. 169 at 9-12), and it is derivative of, and falls with, Enzo's breach of contract claim.  Enzo has not come forward with any evidence that Amersham ever agreed to a "research use" restriction for the Cy Dye products.[10]  Indeed, Cy Dye products are not included in the 1995 Enzo-Amersham agreement (*see* Dkt. 296 at Ex. 1) and Enzo has not come forward with any evidence that Amersham ever assented to any other agreement governing such products.

Enzo's last-ditch "reverse passing off" theory is equally unavailing.  The single most important element of such a claim is consumer confusion; failure to present evidence of such is fatal.  *See McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1280 (S.D.N.Y. 1986); *Gameologist Group, LLC v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141, 166 (S.D.N.Y. 2011); *see also Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 83 (S.D.N.Y. 2003)

---

[10] Moreover, for Enzo to attempt to impose such a research restriction on Cy Dye products -- products held not to infringe the patents asserted against them -- would be unenforceable as against public policy.  (*See Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 730 F. Supp. 1209, 1214-16 (E.D.N.Y. 1990).)

(actual confusion required in state law claims for money damages).  Here, Enzo has presented no record evidence whatsoever of such confusion.

Enzo's Lanham Act claim also fails to present a triable issue of fact.  As an essential element of this claim, Amersham must have made a false representation that is likely to cause confusion as to the origin of the Cy Dye products.  *See* Lanham Act § 43(a)(1)(A) (codified at 11 U.S.C. 1125 (a)(1)(A)).  Enzo's legal theory that, for purposes of a Lanham Act claim, products can be considered to have originated from an alleged patent holder, rather than the producer of the actual goods, has been squarely rejected by the Supreme Court.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-32 (2003); *see also Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007).  Enzo also simply ignores the fact that the Cy Dye products were held by this Court to be non-infringing.  (*See* Dkt. 280 at 19.)  Finally, it has failed to come forward with any evidence of likely -- much less actual -- consumer confusion, an essential element of any Lanham Act claim.  Lanham Act § 43(a)(1)(A).

### D.    CLAIM 6 -- FRAUDULENT INDUCEMENT OF CONTRACT

Enzo has "voluntarily withdraw[n] its claim for fraudulent inducement."  (Dkt. 309 at 25 n.10.)  Summary judgment should thus also be entered in Amersham's favor on this claim.[11]

## III.    CONCLUSION

The Court should thus grant Amersham judgment on Counts I and III through VI.

---

[11] Enzo continues to assert that there are remaining patent infringement allegation against Amersham.  However, for the products it identified, Enzo (i) failed to present any specific allegation prior to the Court-ordered deadline (March 2005) or (ii) dropped such allegations in subsequent discovery responses.  Dkt. 252 at 5-7; Dkt. 296 Ex. 23 (3/9/2005 Am. Resp. to Amersham Interrog. No. 18) at 1-2; Sklenar Decl., Ex. D.

Dated:  May 15, 2013                          Respectfully submitted,


                                              /s/ *Jennifer A. Sklenar*
                                              Jennifer A. Sklenar
                                              ARNOLD & PORTER LLP
                                              777 South Figueroa Street, 44th Floor
                                              Los Angeles, CA 90017-5844
                                              T: 213-243-4027
                                              F: 213-243-4199

                                              Maxwell Preston
                                              ARNOLD & PORTER LLP
                                              399 Park Avenue
                                              New York, NY 10022
                                              T: 212-715-1000
                                              F: 212-715-1399

                                              Matthew M. Wolf
                                              ARNOLD & PORTER LLP
                                              555 Twelfth Street, NW
                                              Washington, DC 20004
                                              T: 202-942-5000
                                              F: 202-942-5999

                                              *Attorneys for Defendants Amersham plc and
                                              Amersham Biosciences*


11