**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC., | ) ) ) |
| Plaintiffs, | ) )   02 CV 8448 (RJS) |
| | )          ECF Case |
| - against - | ) ) |
| AMERSHAM PLC and AMERSHAM BIOSCIENCES, | ) ) ) |
| Defendants, | ) ) |
| - and - | ) ) |
| YALE UNIVERSITY, | ) ) |
| Nominal Defendant. | ) ) ) |

**REPLY STATEMENT PURSUANT TO LOCAL RULE 56.1**
**IN SUPPORT OF AMERSHAM PLC AND**
**AMERSHAM BIOSCIENCES' MOTION FOR SUMMARY JUDGMENT**

In accordance with Local Rule 56.1 of the United States District Court for the Southern

District of New York, Amersham plc and Amersham Biosciences (collectively, "Amersham")

hereby submit this reply to Enzo's Opposition Statement Pursuant to Local Rule 56.1.  As shown

below, there are no controverted material facts underlying Amersham's summary judgment

motion that would require trial.

**Amersham No. 1:**

Enzo Diagnostics, Inc. and Amersham International entered into a Distributorship
Agreement in February of 1995 (the "Agreement").  (Ex. 1.)

**Enzo's Response:**

Undisputed to the extent that Enzo's Distributorship Agreement with
Amersham was executed on February 21, 1995.  (Ex. 133).

1

**Amersham's Reply:**

Enzo does not raise any material factual dispute.

**Amersham No. 2:**

The Agreement provides the following definition of "PRODUCT" -- "PRODUCT means an individual reagent or combination of reagent (kit) that are, individually or combined, covered by ENZO PATENTS (EXHIBIT A) as listed in EXHIBIT B." (Ex. 1 at 1.)

**Enzo's Response:**

Disputed.  THE DEFINITIONS section of the Enzo-Amersham Distributorship Agreement states as follows:

"PRODUCT means an individual reagent or combination of reagents (kit) that are, individually or combined, covered by ENZO PATENTS (EXHIBIT A) as listed in EXHIBIT B." (Ex. 1 at 1.)

Furthermore, WHEREAS clauses state:

WHEREAS ENZO manufactures and/or sells certain PRODUCTS ("PRODUCT(S)") covered by claims of PATENTS;
WHEREAS AMERSHAM wishes to market and distribute some of said PRODUCTS as listed in EXHIBIT B."

(Ex. 133 at 1) (emphasis added).

**Amersham's Reply:**

Enzo does not raise any material factual dispute.  Although Enzo has contended that the definition of PRODUCTS is not limited to products set forth on Exhibit B and includes any products covered by "ENZO PATENTS."  It concedes -- in view of the Court's summary judgment ruling on the patent claims -- that Amersham's Cy Dye products have been held not to be covered by any ENZO PATENTS and preserves this issue for appeal. (Dkt. 309 at 8 n.5.)  Moreover, to the extent that Enzo continues to assert that PRODUCTS subject to the Agreement are not limited to the products on Exhibit B, this is an issue of law, not fact.  *See Adirondack Transit Lines, Inc. v. United Transp. Union,* 305 F.3d 82, 85 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment.") (quotation and citation omitted).  Moreover, Enzo ignores the unambiguous wording of the Agreement, which states "PRODUCTS covered by this agreement are listed in Exhibit B attached hereto" and "[b]oth Enzo and Amersham must agree to such additions to, deletions from or modifications of PRODUCTS in Exhibit B before such additions, deletions or modifications are incorporated therein." (Dkt. 312, Ex. 133 at ¶¶ 3.1, 3.2.)  Enzo has not come forward with any evidence that the Cy Dye

products and other products listed in the complaint were set forth on Exhibit B or added by agreement of the parties (Dkt. 309).

**Amersham No. 3:**

The Agreement further provides that "PRODUCTS covered by this agreement are listed in Exhibit B attached hereto."  (Id. ¶ 3.1.)

> **Enzo's Response:**
>
> Undisputed, however the Agreement's WHEREAS clauses also state that:
>
> > WHEREAS ENZO manufactures and/or sells certain PRODUCTS ("PRODUCT(S)") covered by claims of PATENTS;
> >
> > WHEREAS AMERSHAM wishes to market and distribute some of said PRODUCTS as listed in EXHIBIT B."
>
> (Ex. 133 at 1) (emphasis added).
>
> **Amersham's Reply:**
>
> *See* Reply to No. 2.

**Amersham No. 4:**

Exhibit B to the Agreement lists 36 Products by name and catalog number, provides a short description of each, and gives individual "transfer prices" to be paid to Enzo by Amersham. (Ex. 1 at Tab B (Agreement).)

> **Enzo's Response:**
>
> Disputed. The first five of nine pages of Exhibit B to the Agreement lists 36 Products by name and catalog number, provides a short description of each, and gives individual "transfer prices" to be paid to Enzo by Amersham; the remaining four pages identify a number of additional Products by name and catalog number, provides a short description of each, and gives individual "transfer prices" to be paid to Enzo by Amersham.  See Ex. 133 at Exhibit B.
>
> **Amersham's Reply:**
>
> This purported dispute is immaterial.  *See* Reply to No. 2.

**Amersham No. 5:**

The Agreement further states that additional products can be added to Exhibit B only by mutual consent of the parties: "Both Enzo and Amersham must agree to

additions to, deletions from or modifications of PRODUCTS in Exhibit B before such additions, deletions or modifications are incorporated here." (Ex. 1 ¶ 3.2 (Agreement).)

**Enzo's Response:**

Disputed, both because Amersham offers a legal conclusion, to which no response is required, and because ¶ 3.2 of the Agreement states:

> ENZO or AMERSHAM may propose in writing to add, to modify or to delete a PRODUCT or PRODUCTS in EXHIBIT B. Both Enzo and Amersham must agree to such additions to, deletions from or modifications of PRODUCTS in Exhibit B before such additions, deletions or modifications are incorporated therein."

(Ex. 133 at ¶ 3.2) (emphasis added).

**Amersham's Reply**:

This purported dispute is immaterial. *See* Reply to No. 2.

**Amersham No. 6:**

Amersham was marketing and selling cyanine dye-labeled nucleotides, which were not listed on Exhibit B, at least as early as 1995. (Ex. 29 (2/10/1998 Letter from Long to Rabbani (AM005737)).)

**Enzo's Response:**

Disputed. Amersham has failed to put forth any evidentiary support for this allegation, and it therefore must be rejected. See Local R. 56.1(d). The evidence Amersham offers dates from 1998, not 1995.

**Amersham's Reply:**

Even the evidence to which Enzo cites confirms that Enzo has long been aware of Amersham's assertion that it was selling Cy Dye products since 1995. Dkt. 312, Ex. 159 at 4 n.1. Furthermore, Enzo was aware of Amersham's sale of products outside the scope of the Enzo-Amersham 1995 Distributorship Agreement by at least early 1996. Dkt. 296, Ex. 12. Regardless, Enzo fails to raise a material factual dispute on the issue of whether Cy Dye products are subject to the 1995 Distributorship Agreement because it concedes that the Court's patent summary judgment ruling has eviscerated even its legally erroneous theory (that Cy Dye products are subject to the Agreement because they are covered by ENZO's PATENTS). (Dkt. 309 at 8 n. 5.) Moreover, Enzo's interpretation of the contract is contrary to its unambiguous terms. *See* Reply to No. 2.

**Amersham No. 7:**

Enzo knew of Amersham's sale of fluorescent probes, which were not listed on Exhibit B, by at least by January 1996.  (Ex. 12 (1/12/1996 Fax from Rabbani to Michael Evans (E23009)).)

> **Enzo's Response:**
>
> Undisputed but irrelevant.  The reference in the evidentiary support to "fluorescent probes" is too imprecise to have any meaning relevant to Amersham's Motion.
>
> **Amersham's Reply:**
>
> *See* Reply to No. 6.

**Amersham No. 8:**

Enzo filed the present suit more than six years after it learned of Amersham's sale of products that were not listed Exhibit B.  (Dkt. 1 (Original Compl.).)

> **Enzo's Response:**
>
> Disputed.  Amersham has failed to put forth any evidentiary support for this allegation, and it therefore must be rejected.  See Local R. 56.1(d).  Undisputed that Enzo filed the present suit in October, 2002.
>
> **Amersham's Reply:**
>
> *See* Reply to No. 6.

**Amersham No. 9:**

Enzo alleged in its complaint that Amersham breached the Agreement by engaging in certain activities with respect to the following categories of products: "(i) conjugated alkaline phosphatase products and detection systems"; (ii) "cyanine labeled nucleotides"; and (iii) "sequencing kits and sequencing kit components."  (Second Am. Compl. ¶ 58 (Ex. 39 and Dkt. 70).)

> **Enzo's Response:**
>
> Disputed as incomplete; Enzo alleged the named breaches and their product categories as being "included without limitation."  (Ex. 134 (Second Am. Compl.) at ¶ 58).  Moreover, the Second Amended Complaint includes numerous allegations that Amersham, "separately and together" with NEN Life Sciences/PerkinElmer ("NEN"), breached its Agreement with Enzo (and that NEN breached its Agreement with Enzo)

in relation to products listed in their Agreements.  See id. at ¶ 32 ("Despite their assurances that they would not engage in the commercial development or exploitation of the products listed in their respective distributorship agreements, Amersham and NEN, by themselves and in concert with others, have been doing so."); ¶ 53 ("Amersham's and the Related Defendants' sales of listed products for unauthorized purposes and of unlisted, unauthorized products all generate profits and business opportunities for Amersham and the Related Defendants that should rightfully belong to Enzo."); see also ¶¶ 8, 26, 28, 33, 40.

### Amersham's Reply:

Enzo has failed to raise any material factual dispute.  Enzo's attempt to use the "included without limitation" language in the complaint as a justification for identifying new purported breaches nowhere mentioned in the complaint *after* the deadline for amending contentions and *after* the close of fact discovery is improper.  *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) ("This Circuit has consistently found prejudice and denied amendments where discovery has already been completed.")  Moreover, to the extent that Enzo is now suggesting that it alleged in its complaint that Amersham breached a contract other than the 1995 Enzo-Amersham Distributorship Agreement, such theory was never previously disclosed.  Dkt. 296, Ex. 30 at 4-9.

### Amersham No. 10:

None of those categories of products -- i.e., "(i) conjugated alkaline phosphatase products and detection systems"; (ii) "cyanine labeled nucleotides"; or (iii) "sequencing kits and sequencing kit components" -- were listed on Exhibit B. (See Ex. 1 at Tab B (Agreement).)

### Enzo's Response:

Undisputed but immaterial, as the Agreement encompassed (i) conjugated alkaline phosphatase products and detection systems; (ii) cyanine labeled nucleotides; and (iii) sequencing kits and sequencing kit components by proper interpretation of its terms.

### Amersham's Reply:

Enzo does not deny that these categories of product were ***not*** listed on Exhibit B.  Enzo's assertion that they are "encompassed" by the Agreement "by proper interpretation of its terms" fails to raise a material factual dispute.  The interpretation of an unambiguous Agreement is a question of law.  *See Adirondack Transit Lines, Inc. v. United Transp. Union,* 305 F.3d 82, 85 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on

such an issue may properly be resolved by summary judgment.") (quotation and citation omitted).  The Agreement states "PRODUCTS covered by this agreement are listed in Exhibit B attached hereto" and "[b]oth Enzo and Amersham must agree to such additions to, deletions from or modifications of PRODUCTS in Exhibit B before such additions, deletions or modifications are incorporated therein." (Dkt. 312, Ex. 133 at ¶¶ 3.1, 3.2.)  Enzo has not come forward with any evidence that these categories of products were added to Exhibit B by agreement of the parties (Dkt. 309; Dkt. 296, Ex. 30 at 4-9).

Moreover, even under Enzo's flawed interpretation of the Agreement -- that PRODUCTS includes any products covered by ENZO PATENTS -- Enzo has not come forward with any evidence that these three categories of products were "covered" by ENZO PATENTS.  The Court granted Amersham's summary judgment motion of noninfringement as to the Cy Dye nucleotides and sequencing products.  (Dkt. 280 at 10-12, 19.) Moreover, Enzo never timely accused the conjugated alkaline phosphatase products and detection systems of infringement.  (Dkt. 295 at 6-7, 23-24.)

**Amersham No. 11:**

Enzo did not allege in its complaint that Amersham breached the "best efforts" requirement of section 8.1 of the Agreement.  (See generally Second Am. Compl. at Ex. 39 and Dkt. 70.)

**Enzo's Response:**

Disputed. The Second Amended Complaint alleges that Amersham breached its Agreement with Enzo in various respects (see ¶ 58 ("Amersham has committed multiple material breaches of the Amersham Distributorship Agreement")) and only detailed some of those breaches; they were "including without limitation."  Id.  Moreover, Enzo alleged that Amersham breached its Agreement with Enzo in relation to products listed in its Agreement.  See supra Enzo No. 9.  The Second Amended Complaint also alleges generally that Amersham sold new products in derogation of its Agreement with Enzo and in competition with the listed products, thereby breaching its best efforts obligations: Amersham's actions "caused Enzo to suffer substantial harm in the form of lost sales, profits, goodwill and business opportunities."  Id. at ¶ 32; see also ¶¶ 33, 40 ("Under its respective distributorship agreement with Enzo, NEN was authorized to appoint and did appoint as "NEN distributors", Amersham, Orchid and Molecular Probes.  These "NEN distributors" were authorized to resell only the products listed in the NEN distributorship agreement and to sell them for research use only.  The NEN distributorship agreement required that "NEN distributors" be notified in writing of this research use only restriction.") (emphasis added).

**Amersham's Reply:**

Enzo has failed to raise any material factual dispute and does not dispute that the complaint makes no specific mention of a purported breach of the "best efforts" provision.  Enzo's attempt to use the "included without limitation" language in the complaint as a justification for identifying new purported breaches nowhere mentioned in the complaint *after* the deadline for amending contentions and *after* the close of fact discovery is improper. *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) ("This Circuit has consistently found prejudice and denied amendments where discovery has already been completed.") Moreover, none of the complaint sections that Enzo cites in response to No. 9 or No. 11 relate to a purported breach of the best efforts provision for the products listed on Exhibit B.

**Amersham No. 12:**

Enzo has never amended its complaint to include the allegation that Amersham breached the "best efforts" requirement of section 8.1 of the Agreement.  (Second Am. Compl. (Ex. 39 and Dkt. 70).)

**Enzo's Response:**

Disputed.  Enzo has amended its Complaint twice, and the operative Second Amended Complaint provides that Amersham breached its Agreement with Enzo in various respects (see ¶ 58 ("Amersham has committed multiple material breaches of the Amersham Distributorship Agreement")) and only detailed some of those breaches; they were "including without limitation."  Id.; see supra Enzo No 11.

**Amersham's Reply:**

Enzo has failed to raise any material factual dispute as it does not point to any amendment to its complaint that includes an allegation that Amersham breached the "best efforts" provision.  Enzo's attempt to use the "included without limitation" language in the complaint as a justification for identifying new purported breaches nowhere mentioned in the complaint *after* the deadline for amending contentions and *after* the close of fact discovery is improper.  *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) ("This Circuit has consistently found prejudice and denied amendments where discovery has already been completed.")

**Amersham No. 13:**

Amersham made the Exhibit B products available to consumers, by listing them in Amersham's catalogs and including them in Amersham's marketing and promotional activities.  (Ex. 5 (Long Dep. at 80).)

**Enzo's Response:**

Disputed.  This is not a fact but an attempt to state a conclusion of law for which no response is required to the extent it intimates Amersham fulfilled its obligations under the Agreement.  Moreover, Amersham did not list the following Enzo products from pp. 6-9 of Exhibit B to the Distribution Agreement (AM005151-AM005156) in its BioDirectory 1998 (AM007594-AM008051); BioDirectory 1999 (AM11342-AM12128); BioDirectory 2000 (AM12129-AM12946); BioDirectory 2001 (AM009278-AM010144); or BioDirectory 2002 (AM008746-AM008824) catalogs:

BioPap® Kits Cat. Nos. 32881, 32892, 32883;

PathoGene® Kits Cat. Nos. 32879, 32895, 32877, 32878, 32800, 32871,32872,  32873, 32874, 32875, 32876, 32861, 32862, 32863, 32864, 32865, 32866, 32851, 32852, 32853, 32854, 32855, 32856;

In Situ Hybridization Detection Systems Cat. Nos. 32870, 32860;

Hybridization & Detection Assays Cat. Nos. 46331, 46340, 46341, 46350, 46351, 46352, 46353, 46354, 46360, 46361;

Hybridization Accessories Cat. Nos. 31871, 31872, 31873, 31875, 31876, 31877, 31500, 31508;

BIOPROBE® Labeled Probes Cat. Nos. 40834, 40835, 40836, 40837, 40838, 40839, 40842, 40843, 40846, 49847, 40848, 40849, 40714;

BIOPROBE® Labeling Systems for Nucleic Acids Cat. Nos. 42809, 42810, 42814;

DETEK® Signal Generating Systems Cat. Nos. 43818, 43861, 43805, 43820, 43822, 43823;

Glass fiber Filters Cat. Nos. 44524, 44525, 44101.

Further, Amersham listed all of the Enzo products with Amersham Product Codes from pp. 1-5 of Exhibit B to the Distribution Agreement (AM005148-AM005152) in its BioDirectory 1998 catalog (AM007594-AM008051), but removed Amersham Product Codes RPN2071, RPN2072 RPN2111, RPN3006, RPN3022, RPN3029, RPN3041, and RPN3021 from its BioDirectory 1999 catalog (AM11342-AM12128).  In addition to removing all of the eight aforementioned Amersham Product Codes, an

additional three products (RPN3200, RPN3300, RPN3400) were removed in BioDirectory 2000 (AM12129-AM12946).  BioDirectory 2001 (AM009278-AM010144) did not contain ten of the eleven aforementioned Product Codes; RPN3006 was reinstated (AM010054).  Product Code RPN2123, though, was removed for the first time.  Finally, all of the aforementioned eleven Amersham Product Codes were not listed in the BioDirectory 2002 catalog (AM008079-AM008824).

Enzo acknowledges that it cannot prove a negative – i.e., the lack of these products in the cited catalogs – without attaching each catalog in its entirety to the Declaration.  The catalogs, however, are hundreds, if not over 1,000 pages in length.  In order to avoid burdening the Court, Enzo has not attached the catalogs to the Declaration of John Elliott in Opposition to PerkinElmer's, Orchid's, Molecular Probes' and Amersham's Motions for Summary Judgment (filed herewith); they are available to the Court at its request.

**Amersham's Reply:**

The purported dispute raised by Enzo is immaterial.  The purported violation of the "best efforts" provision was not raised by Enzo in any fashion until after the Court's deadline for amending contentions and the close of fact discovery.  Dkt. 296 Ex. 21 (2/7/2005 Hrg. Tr.) at 10 ("I will suggest, if there's going to be amended answers to interrogatories previously [served], it be done in 30 days from now. Then after, I will not entertain anything further. And any changes to interrogatory answers, I have to know for my own benefit what I"m going to be asked to be resolved."); Dkt. 113; Sklenar Decl., Ex. C.  Moreover, the alleged evidence cited above by Enzo was not previously disclosed in any fashion. Dkt. 296, Ex. 30 at 4-9.

**Amersham No. 14:**

Although the parties exchanged drafts of a proposed "Amendatory Agreement," they could not come to final agreement on its terms.  (Ex. 17 (8/22/2000 Letter from Fedus to Rollins (E2286-90)); Ex. 18 (2/27/2001 Letter from Long to Rabbani (AM006001)); Ex. 19 (AM 006180).)

**Enzo's Response:**

Disputed.  Amersham has failed to put forth any evidentiary support for this allegation, and it therefore must be rejected.  See Local R. 56.1(d).  The evidence Amersham offers does not demonstrate that Enzo and Amersham "could not come to final agreement" on the terms of an Amended Distributorship Agreement.  Indeed, in Amersham Ex. 18, Ron Long of Amersham expresses his "hope that we can reach agreement on these outstanding issues. . . ."

**Amersham's Reply:**

Enzo's purported dispute is immaterial as it concedes that the Amendatory Agreement was never executed.

**Amersham No. 15:**

The Amendatory Agreement was never executed.  (Second Am. Compl. ¶ 74(a) (Ex. 39 and Dkt. 70); Ex. 30 (Enzo's Response to Interrogatory No. 5) at 10.)

**Enzo No. 15:**

Undisputed.

**Amersham No. 16:**

Amersham decided not to enter into the Amendatory Agreement because of Enzo's demand that Amersham cease all research in the area of labeled nucleotides.  (Ex. 14 (8/7/1998 Letter from Long to Rabbani (AM005727); Ex. 15 (4/6/1999 Fax from Rabbani to Evans (AM005729-31)); Ex. 18 (2/27/2001 Letter from Long to Rabbani (AM006001)).)

**Enzo's Response:**

Disputed.  This is not a fact but an attempt to state a conclusion of law for which no response is required.  Further, Amersham has failed to put forth any evidentiary support for this allegation, and it therefore must be rejected.  See Local R. 56.1(d).  The evidence Amersham offers does not demonstrate that "Amersham decided not to enter into the Amendatory Agreement because of Enzo's demand that Amersham cease all research in the area of labeled nucleotides."  Amersham Ex. 18, Ron Long of Amersham expresses his "hope that we can reach agreement on these outstanding issues. . . ."  Further, Anthony J. Rollins of Amersham testified that the only reason that Amersham did not enter into an Amended Distributorship Agreement was because Amersham felt that by doing so, it would breach its agreements with Applied Biosystems, Inc. and Visible Genetics, Inc. to supply CyDye labeled nucleotides for diagnostic use.  (Ex. 142, Rollins Dep. Tr. 311:15-314:16, May 10, 2005.)

**Amersham's Reply:**

Enzo's purported dispute is immaterial and no longer relevant.  Although Enzo previously contended that Amersham committed unfair competition by declining to enter into the proposed Amendatory Agreement with Enzo, Enzo's May 1, 2013 opposition brief makes no mention of this as part of Enzo's unfair competition claim.  Dkt. 309 at 20-24.

**Amersham No. 17:**

Amersham approached Yale in early 1995 concerning obtaining a potential license to the Ward patents.  (Ex. 30 (Enzo's Response to Interrogatory No. 5) at 11; Ex. 34 (10/7/1999 Letter from Rabbani to Long (AM 005017-24)).)

    **Enzo's Response:**

    Undisputed.

    **Amersham's Reply:**

    Although this fact is undisputed, it is no longer relevant.  Although Enzo previously contended that Amersham committed unfair competition by approaching Yale to discuss obtaining a potential license to the Ward patents, Enzo abandons this argument in its opposition brief (no doubt because such a claim was time barred (*see* Response to No. 19).  Dkt. 309 at 20-24.

**Amersham No. 18:**

Amersham's discussions with Yale concerning a possible license to the Ward patents were unsuccessful.  (See generally Ex. 30 (Enzo's Response to Interrogatory No. 5) at 11.)

    **Enzo's Reponse:**

    Undisputed.

    **Amersham's Reply:**

    *See* Response to No. 17.

**Amersham No. 19:**

Enzo knew by at least October 7, 1999 -- more than three years before it filed its complaint -- that Amersham had approached Yale concerning a potential license to the Ward patents.  (See Ex. 34 (10/7/1999 Letter from Rabbani to Long (AM 005017-24)); Dkt. 1 (Orig. Compl.).)

    **Enzo's Response:**

    Undisputed.

    **Amersham's Reply:**

    *See* Response to No. 17.

**Amersham No. 20:**

The complaint identifies no specific basis for Enzo's unfair competition under federal law, i.e. the Lanham Act claim. (See generally Second Am. Compl. ¶¶ 77-8 1 (Ex. 39 and Dkt. 70).)

**Enzo's Response:**

Disputed. The Second Amended Complaint alleges the factual predicates for the unfair competition claim. *See, e.g.*, ¶ 49 ("Amersham's and the Related Defendants' breaches, infringement and other torts stem from a willful and calculated campaign to defraud Enzo and usurp Enzo's proprietary rights for their own economic gain.") (emphasis added); ¶ 53 ("Amersham and the Related Defendants, separately and together, have created an illicit market in products and services based on Enzo's patented technology.  At a minimum, Enzo has been denied proper remuneration, in the form of lost sales, royalties, distributor payments and business opportunities, for the sales of products and services covered by the Enzo Patents.  In addition, Amersham's and the Related Defendants' sales of listed products for unauthorized purposes and of unlisted, unauthorized products all generate profits and business opportunities for Amersham and the Related Defendants that should rightfully belong to Enzo.  As the owner or exclusive licensee of the Enzo Patents, Enzo alone is entitled to develop products covered by the Enzo Patents; to exploit the business opportunities presented by these patents and products; to derive profits from the sale and commercial exploitation of these patents and products; and to reap the goodwill associated with these patents and products.").

In addition, the evidence adduced in this action shows that Amersham falsely designated the origin of the Enzo reagents.  The Declaration of John Burczak in Support of Defendants' Joint Motion for Summary Judgment, Dkt. 161 ("Burczak Decl."), did not include a *single* example of a label or package insert that references Enzo or Enzo's patents.  Amersham's document production also reflected a failure to label Products.  *See* Exs. to Burczak Decl.; Ex. 153-158.

**Amersham's Reply:**

Enzo fails to raise a material factual dispute.  Even if the statements that it quotes above could be understood to relate to its Lanham Act claim, Enzo has not come forward with any evidence to establish that it has any "proprietary right" protectable under the Lanham Act that has been usurped by Amersham  particularly now that the Court has granted summary judgment in Amersham's favor on the patent claim.

In addition, Enzo never timely disclosed its current assertion that "Amersham falsely designated the origin of the Enzo reagents." Nowhere is the allegation mentioned in the complaint, and it was never disclosed *before* the deadline for amending contentions or *before* the close of fact discovery; such a belated claim is entirely prejudicial and is improper.  *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) ("This Circuit has consistently found prejudice and denied amendments where

discovery has already been completed."); *see* Dkt. 312, Ex. 169 at 3-12 (failing to disclose such an allegation in response to contention interrogatory).

Even if Enzo's untimely assertions were considered, Enzo has not come forward with any factual evidence to support such a conclusory assertion.  For example, it has not presented any evidence whatsoever that it originated any "reagents" that Amersham later sold or that there has been any confusion whatsoever on the part of consumers as to such an issue.  Finally, Enzo's assertion that the Burczak declaration "did not include a *single* example of a label or package insert that references Enzo or Enzo's patents" is perplexing at best.  The Burczak declaration described the products for which Amersham moved for summary judgment of noninfringement.  The Court *granted* Amersham's motion on such products.  Dkt. 280 at 5-12.  Enzo has failed to explain, even under its legally flawed interpretation of the parties' 1995 Distributorship Agreement, why it would have expected Amersham to label products as Enzo's that were not covered by any Enzo patents.

**Amersham No. 21:**

Enzo's president, Barry Weiner, testified that the Lanham Act claim was based upon the fact that Amersham allegedly marketed "products utilizing Enzo technology covered under issued patents" without listing Enzo's patents on Amersham's marketing materials.  (Ex. 36 (Weiner Dep. Tr. 39).)

> **Enzo's Response:**
>
> Disputed.  Amersham has failed to put forth any evidentiary support for this allegation, and it therefore must be rejected.  *See* Local R. 56.1(d).  The testimony Amersham offers in support of this allegation concerns PerkinElmer's actions, not Amersham's: "How do you think that PerkinElmer has violated the Lanham Act? A: PerkinElmer is . . . ." (Amersham Ex. 36 (Weiner Tr. at 38:2-4).
>
> **Amersham's Reply:**
>
> Enzo fails to raise a material factual dispute. This purported dispute is immaterial because Enzo abandoned this theory after it lost summary judgment on its patent claim.  Enzo's current Lanham Act theories are nowhere mentioned in the complaint, nor disclosed *before* the deadline for amending contentions or *before* the close of fact discovery; therefore this belated claim is improper.  *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) ("This Circuit has consistently found prejudice and denied amendments where discovery has already been completed."); *compare* Dkt. 309 at 20-24 *with* Dkt. 296, Ex. 30 at 9-12 (failing to disclose such an allegation in response to contention interrogatory) *and* Dkt. 70.

**Amersham No. 22:**

Amersham's purchase of cyanine dye-labeled nucleotides from PerkinElmer predates PerkinElmer's Agreement with Enzo.  (See Ex. 11 (4/26/1995 Fax from

Alan W. Seadler to Rabbani (AM005045)); Ex. 29 (2/10/1998 Letter From Long
to Rabbani (AM005737)); Dkt. 161 ¶¶ 12, 28 (Burczak Decl.).)

### Enzo's Response:

Disputed.  Amersham has failed to put forth any evidentiary support for this allegation,
and it therefore must be rejected.  *See* Local R. 56.1(d).  The evidence offered does not
state that Amersham has purchased "cyanine dye-labeled nucleotides from PerkinElmer,"
*See* Amersham Ex. Nos. 11 (no mention of PerkinElmer); 29 (same); Burczak Decl. at ¶
12 (same); Burczak Decl. at ¶ 28 (stating that "Amersham has contracted with Perkin-
Elmer for the right to use PA modified nucleotides in its Cy dye labelled dNTP monomer
products;" no assertion that Amersham purchased "cyanine dye-labeled nucleotides from
PerkinElmer").

### Amersham's Reply:

Enzo fails to raise a material factual dispute. Enzo's own evidence confirms this
undisputed fact.  Dkt. 312, Ex. 159 at 4 n.1; Dkt. 312, Ex. 6.

## Amersham No. 23:

Enzo knew of Amersham's purchase of cyanine dye-labeled nucleotides from
PerkinElmer by at least July of 1999 -- more than three years before it filed the
present action.  (See Ex. 32 (7/23/99 Letter from Rabbani to Long (AM004639-
40)).)

### Enzo's Response:

Disputed.  Amersham has failed to put forth any evidentiary support for
this allegation, and it therefore must be rejected.  See Local R. 56.1(d).
The evidence offered does address cyanine dye-labeled nucleotides.
(Amersham Ex. No. 32).

### Amersham's Reply:

Enzo fails to raise a material factual dispute. Enzo does not seriously dispute its
knowledge (Dkt. 309 at 18).  Moreover, Enzo's own cited evidence confirms this
undisputed fact.  Dkt. 312, Ex. 159 at 4 n.1; Dkt. 312, Ex. 6.  Regardless, this fact is no
longer material as Enzo no longer asserts that Amersham's *purchase* of cyanine dye-
labeled nucleotides from PerkinElmer constitutes wrongdoing.  Dkt. 309 at 18.

## Amersham No. 24:

Amersham communicated its view to Enzo concerning the invalidity of Enzo's
patents before entering the Agreement.  (*See* Ex. 10 (E00022587- 01).)

**Enzo's Response:**

Disputed as incomplete.  Amersham witnesses testified that Amersham, as a matter of corporate protocol, would not enter into a license or distributorship agreement with a third party if Amersham knew that the third party's patent is invalid or that Amersham's products do not infringe the patent.  (Ex. 138 (4/27/07 Hesslewood Tr.) at 167:1-169:2).

**Amersham's Reply:**

Enzo fails to raise a material factual dispute.  Enzo fails to respond to the fact at issue.  Regardless, this fact is no longer at issue as Enzo has withdrawn its claim of fraudulent inducement.  (*See* Dkt. 309 at 25 n.10.)


Dated: May 15, 2013                              Respectfully submitted,


                                                 /s/ *Jennifer Sklenar*
                                                 Jennifer A. Sklenar
                                                 Arnold & Porter LLP
                                                 777 South Figueroa Street, 44th Floor
                                                 Los Angeles, *CA 90017-5844*
                                                 T: 213-243-4027
                                                 F: 213-243-4199

                                                 Matthew M. Wolf
                                                 ARNOLD & PORTER LLP
                                                 555 Twelfth Street, NW
                                                 Washington, DC 20004
                                                 T: 202-942-5000
                                                 F: 202-942-5999

                                                 Maxwell Preston
                                                 ARNOLD & PORTER LLP
                                                 399 Park Avenue
                                                 New York, NY 10022
                                                 T: 212-715-1000
                                                 F: 212-715-1399

                                                 *Attorneys for Defendants Amersham plc and*
                                                 *Amersham Biosciences*