UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

No. 02 Civ. 8448 (RJS)
_____

E NZO B IOCHEM, I NC., *et al.*,

Plaintiffs,

VERSUS

A MERSHAM PLC, *et al.*,

Defendants.

_____

MEMORANDUM AND ORDER
October 22, 2013
_____

R ICHARD J. S ULLIVAN, District Judge.

Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc. ("Enzo") bring this action for patent infringement, fraudulent inducement, breach of contract, unfair competition, and tortious interference against Defendants Amersham plc and Amersham Biosciences ("Amersham"). On September 21, 2012, the Court granted summary judgment in favor of Amersham with respect to Enzo's patent infringement claims. Now before the Court is Amersham's motion for summary judgment as to Enzo's non-patent claims. For the reasons set forth below, the Court grants Amersham's motion in its entirety.

I. B ACKGROUND

A. Facts

On February 21, 1995, Enzo and Amersham entered into a Distributorship Agreement (the "Agreement").[1] (56.1 Stmt.

---

[1] The facts are taken from the parties' Local Civil Rule 56.1 statements and the declarations and exhibits submitted in connection with this motion. Citations to the Rule 56.1 statements ("56.1 Stmt.") refer to undisputed facts in the final joint statement of the parties (Doc. No. 319) unless otherwise indicated (*e.g.*, "Enzo Opp. 56.1"). In deciding this motion, the Court has also considered Amersham's brief in support of its motion ("Mem."), Enzo's brief in opposition ("Opp."), Amersham's reply brief, and the transcript from the oral argument on the motion ("Tr.").

¶ 1; Decl. of Matthew M. Wolf, dated Dec. 21, 2012, Doc. No. 296 ("Wolf Decl."), Ex. 1.) The preamble to the Agreement explains:

> Whereas[] Enzo owns rights to certain Patents listed in Exhibit A ("Patents");
>
> Whereas Enzo manufactures and/or sells certain Products ("Product(s)") covered by claims of Patents;
>
> Whereas Amersham wishes to market and distribute some of said Products as listed in Exhibit B;
>
> Now, therefore, in consideration of the good and valuable mutual agreements hereinafter set forth, the parties hereto agree as follows[.]

(Wolf Decl. Ex. 1 at 1.)[2] The Agreement goes on to define a "Product" as "an individual reagent or combination of reagents (kit) that are, individually or combined, covered by Enzo Patents (Exhibit A) as listed in Exhibit B." (*Id.*) The Agreement later reiterates that "Products covered by this Agreement are listed in Exhibit B," but that Enzo or Amersham "may propose in writing to add, to modify or to delete a Product or Products in Exhibit B," and proposals may be adopted if both parties agree. (*Id.* Ex. 1 at 4.) Exhibit B is a nine-page document that lists the "Products and transfer price paid by Amersham" under the Agreement. (*Id.* Ex. 1 at Ex. B.)

Since the mid-1990s, Amersham has been producing, selling, and buying several items that are not listed in Exhibit B to the Agreement – specifically, conjugated alkaline phosphatase products and detection systems; cyanine labeled nucleotides ("CyDye" products); and sequencing kits and sequencing kit components (collectively, the "Contested Products"). (56.1 Stmt. ¶ 10.) For example, shortly before Enzo and Amersham finalized the Agreement, Amersham licensed alkaline phosphatase products and sequencing kits and components from Harvard University and began to develop products from these items. (Decl. of John Burczak, dated Dec. 22, 2006, Doc. No. 161 ("Burczak Decl."), ¶ 25; Mem. at 3.) Then, several months after signing the Agreement, Amersham acquired Biological Detection Systems – a CyDye product distributor (Wolf Decl. Ex. 11) – and Amersham soon began distributing CyDye products in its own name (Decl. of John J. Elliott, dated May 1, 2013, Doc. No. 312 ("Elliott Decl."), Ex. 159 at 4, 5 n.1). Additionally, sometime prior to October 7, 1999, Amersham started acquiring CyDye products from PerkinElmer, a developer, manufacturer, and distributor of life-science products and technologies.[3] (Elliott Decl. Ex. 159 at 3; SAC ¶ 12.)

By 1995, Enzo had caught wind that Amersham was selling products not listed in the Agreement (Elliott Decl. Exs. 11, 159 at 5 n.1), and almost immediately after Enzo and Amersham signed the Agreement, they began to negotiate expansion of the list of Products set forth in Exhibit B (Wolf Decl. Ex. 13 at 221:5–222:10). By July 2001, however, Enzo and Amersham's

---

[2] The Agreement refers to itself and to "Amersham," "Enzo," "Product(s)," "Patents," "Exhibit A," and "Exhibit B" in all capital letters, which the Court has modified so that only the first letter of these terms is capitalized.

[3] The parties alternately use the names "PerkinElmer" and "NEN" to refer to the same entity because NEN Life Sciences was acquired by PerkinElmer on an unspecified date in the 1990s. (*See* Mem. at 3 n.5; Opp. at 5 n.3.) The Court uses only the name of NEN's successor, PerkinElmer.

2

negotiations came to an impasse (*id.* Ex. 19), at least in part because Amersham was concerned that some of the proposed amendments might be in tension with its potential obligation to provide CyDye products to Applied Biosystems (Elliott Decl. Ex. 142 at 311:10–313:25). Ultimately, the parties never agreed to add new products to the list of covered Products. (Wolf Decl. Exs. 17–19; 56.1 Stmt. ¶ 14.)

### B. Procedural History

Enzo commenced this action by filing the Complaint on October 23, 2002.[4] (Doc. No. 1.) Nearly three months later, on January 15, 2003, Enzo filed the Amended Complaint (Doc. No. 36), and on May 29, 2003, it filed the Second Amended Complaint (the "SAC"), which – a decade later – is still the operative pleading document. (Doc. No. 70.) Enzo alleges five substantive causes of action. The Court's September 24, 2012 summary judgment order disposed of Count 2 of the SAC, which alleges patent infringement. (Doc. No. 280.) The instant motion addresses the four remaining Counts.[5]

Count 1 alleges breach of contract. Enzo claims that Amersham breached the Agreement by "selling and/or distributing Products, without Enzo's authorization, that are not listed in Exhibit B . . . , including without limitation" the Contested Products. (SAC ¶ 58(a); 56.1 Stmt. ¶¶ 9–10.) Enzo further alleges that Amersham breached the Agreement by selling, using, distributing, and/or manufacturing the Contested Products or manufacturing new products that utilize them. (SAC ¶ 58(b)–(c).) Finally, Enzo accuses Amersham of purchasing Contested Products from PerkinElmer in contravention of the Agreement. (*Id.* ¶ 58(d).)

In Counts 3 and 4, Enzo claims that Amersham engaged in unfair competition. Count 3 asserts state-law claims, namely, that in 2001 Applied Biosystems "conspired with Amersham or otherwise restrained unlawfully Amersham's dealings with Enzo, thereby causing Amersham" (1) to cease further dealings with Enzo; (2) to "misappropriate . . . Enzo's intellectual property"; and (3) "to refuse to negotiate with Enzo" with respect to the negotiated amendments to expand the number of the Exhibit B Products. (*Id.* ¶ 74(a).) Moreover, Enzo alleges that Amersham tortiously misappropriated goods that Enzo had produced when Amersham purchased CyDye products from PerkinElmer and used them to engage in commercial development, in breach of a *separate* distribution agreement between PerkinElmer and Enzo. (*Id.* ¶ 74(b).) Enzo's federal claim in Count 4 generally alleges that Amersham engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), although it does not specify what product or products sit at the center of this claim. (*Id.* ¶¶ 78, 80.)

In Count 5, Enzo alleges tortious interference by Amersham. This state-law claim is based on CyDye-product transactions between Amersham and PerkinElmer that allegedly interfered with

---

[4] This case was originally assigned to the Honorable John E. Sprizzo, who passed away in December 2008. The case was reassigned to my docket on January 8, 2009, but shortly thereafter, it was stayed until April 7, 2010 while an appeal in a related case was taken to the Federal Circuit. (Doc. Nos. 207, 212, 218.)

[5] Enzo opted to withdraw a sixth cause of action for fraudulent inducement during the course of briefing this motion. (SAC ¶¶ 90–97; Opp. at 25.) Enzo also pleaded a seventh cause of action to join Yale University as a nominal defendant. (SAC ¶¶ 98–103.)

3

Enzo's separate distribution agreement with PerkinElmer. (*Id.* ¶¶ 85–87.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson*, 477 U.S. at 249. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

## III. DISCUSSION

The Court will first address Enzo's claim for breach of contract. It will then turn to Enzo's tortious interference claims and its state and federal claims for unfair competition.

### A. Breach of Contract

Enzo alleges that Amersham breached the Agreement by selling, purchasing, distributing, using, and/or manufacturing some or all of the Contested Products. (SAC ¶ 58; 56.1 Stmt. ¶ 9.) Breach-of-contract claims are susceptible to summary judgment if the underlying contract's clear and unambiguous language excludes the plaintiff's claim. *See, e.g.*, *Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008). Here, the plain language of the contract does just that. The Agreement states unambiguously that "Products covered by [the] Agreement are listed in Exhibit B" (Wolf Decl. Ex. 1 at 4), and critically, Exhibit B makes no reference to the Contested Products that underlie each breach alleged in the SAC (*id.* Ex. 1 at Ex. B; Enzo Opp. 56.1 ¶ 10). The Agreement *does* allow that Enzo or Amersham may "propose in writing to add, to modify or to delete a Product or Products in Exhibit B" and that a proposal may in turn be adopted on consent of both parties, but the parties agree that no amendment was ever adopted. (Wolf Decl. Ex. 1 at 4.)

Enzo nevertheless insists that the Agreement "encompassed" the Contested Products "by proper interpretation of its terms" (Enzo Opp. 56.1 ¶ 10) and that "the products listed in Exhibit B are merely non-limiting examples of products covered by the Agreement" (Opp. at 2–3). Unfortunately for Enzo, this interpretation of the Agreement does not square with the Agreement's plain and persistent language, which explicitly states that:

- " . . . Amersham wishes to market and distribute some of said Products as listed in Exhibit B." (Wolf Decl. Ex. 1 at 1.)

- "Product means an individual reagent or combination of reagents (kit) that are . . . covered by Enzo Patents (Exhibit A) as listed in Exhibit B." (*Id.*)

4

- "Products covered by this agreement are listed in Exhibit B . . . ." (*Id.* at 4.)

The Agreement clearly applies its terms to the Products that are listed in Exhibit B and only to those Products. Therefore, because the SAC seeks relief only for Amersham's activity with respect to products *not* listed in Exhibit B (SAC ¶ 58; 56.1 Stmt. ¶¶ 9–10), summary judgment is warranted on this claim.

The Court also notes that Enzo's opposition brief raises three *new* grounds under its cause of action for breach of contract. Specifically, Enzo asserts that Amersham (1) "failed to properly label the Products" that it sold under its Agreement with Enzo; (2) "failed to fulfill the Best Efforts requirement of the Agreement by not listing Products in its catalogs, by not putting forth the required effort to sell them, and by telling third parties that Enzo's Patents were invalid"; and (3) "breached its obligations to [PerkinElmer]," of which Enzo was a third-party beneficiary. (Opp. at 8; *see id.* at 8–14.)

The Court will not permit Enzo to raise new claims for breach of contract at this late stage. It is well settled that a party may not amend its pleadings in its briefing papers. *See Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *see also Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."). Indeed, in 2007, while this case was assigned to Judge Sprizzo, Enzo was explicitly warned: "It's not what you argue[;] it's what's in your complaint." (Wolf Decl. Ex. 24 at 312:17–18.) To the extent that Enzo omitted claims from the pleadings, it certainly cannot raise them in its summary judgment brief filed long after discovery has concluded and more than a decade after the Second Amended Complaint was filed.

Enzo nonetheless insists that its unpleaded breach-of-contract claims are not, in fact, new. In support of this position, Enzo points to its allegation that "Amersham committed multiple material breaches of the [Agreement]" (SAC ¶ 58), and explains that the SAC "only detailed *some* of those breaches . . . [,] 'including [them] without limitation'" to other unalleged breaches (Enzo Opp. 56.1 ¶ 11 (quoting SAC ¶ 58) (emphasis added)). In essence, Enzo contends that these caveats preserved claims for *any* breach of contract by Amersham, whether that breach was specified or not. (Tr. at 33:9–36:3; Opp. at 16–17.) This, of course, is nonsense. A plaintiff may not pivot from its stated claims to new ones at the summary judgment stage simply because it inserted a few vague catch-all phrases into its pleadings. *See Caribbean Wholesales & Serv. Corp v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] in effect is apparently attempting to add a [different contract] claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion."); *First Am. Commercial Bancorp, Inc. v. Saatchi & Saatchi Rowland, Inc.*, 865 N.Y.S.2d 424, 428 (App. Div. 2008) (holding that a party may not simply allege a general breach of contract and, later on, sort out the specific breach that it intends to litigate); *see also T.G. ex rel. R.P. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 6058 (JGK), 2013 WL 5178300, at *15 (S.D.N.Y. Sept. 16, 2013) (holding that catch-all allegations do not preserve claims); *Kipbea Baking Co. v. Strauss*, 218 F. Supp. 696, 699–700 (S.D.N.Y. 1963)

5

(concluding that a party does not make out a claim based on "conclusory allegations of breach of contract" – a "specific breach" is required).

Enzo also contends that its new claims should be considered because it fronted these arguments in its Responses to Amersham's Second Set of Interrogatories, dated June 22, 2005, and in its brief opposing Amersham's January 4, 2007 motion for summary judgment. (Opp. 16–18; *see* Tr. 35:16–37:17.) Enzo therefore reasons that "Amersham cannot claim to be prejudiced by the[se] legal theories." (Opp. at 17.) Of course, whether or not Amersham had some idea of Enzo's unpleaded claims is irrelevant. The simple fact remains that Enzo may not pursue new causes of action without having amended its pleadings. *See, e.g.*, *Avillan*, 483 F. App'x at 639; Oral Order of Judge Sprizzo dated July 18, 2007.[6] To date, Enzo has not sought leave to do so, and at this point, even if Enzo did seek leave to amend, the Court would deny the request. After more than a decade of wrangling and *multiple* bites at the discovery apple, Enzo will not be permitted to assert new claims based on new factual assertions that would effectively commence a new lawsuit. *See Smith v. Cadbury Beverages, Inc.*, 116 F.3d 466, at *1 (2d Cir. 1997); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) (recognizing that amendment is generally denied after discovery has already been completed).

Because Enzo has failed to plead a breach-of-contract claim that is supported by the Agreement, the Court grants summary judgment in favor of Amersham on Count 1 of the SAC.

### B. Tortious Interference

Enzo also asserts that Amersham tortiously interfered with Enzo's business relationship with PerkinElmer. A tortious interference claim under New York law requires a plaintiff to prove that: "(1) there [was] a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interfere[d] with it; (3) the defendant act[ed] with the sole purpose of harming the plaintiff, or, failing that level of malice, use[d] dishonest, unfair, or improper means; and (4) the relationship [was] injured." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997). As noted above, Enzo had a separate contract with PerkinElmer, and claims that it was injured when Amersham intentionally interfered with that contract by inducing PerkinElmer to sell CyDye products to Amersham in breach of the PerkinElmer–Enzo agreement. (SAC ¶ 85–87.) This claim is barred by the statute of limitations, and it would also fail on the merits.[7]

Under New York law, the statute of limitations for tortious interference claims is

---

[6] Judge Sprizzo warned that Enzo's "[p]leading[s] set forth [its] claim," and that it would not be permitted to plead a specific breach of contract "and then [to] argue every possible breach of contract [it could] think of . . . . [Enzo had] to describe with some specificity the kind of claim [it was] asserting. . . . Otherwise, [there would be] no purpose to seek leave to amend if you could just amend willy nilly . . . ." (Wolf Decl. Ex. 24 at 281:10–282:2.)

[7] The Court notes that, although Enzo alleged tortious interference with a business relationship in the SAC, it has pivoted to a cause of action for tortious interference with contract, which consists of different elements than Enzo's pleaded cause of action. (Opp. at 18–20.) As the Court has made clear, it will not permit Enzo to amend its pleadings by way of a summary judgment brief, but in any event, a cause of action for interference with contract would also be time-barred. *See* N.Y. C.P.L.R. § 214(4); *Mannix Indus., Inc. v. Antonucci*, 594 N.Y.S.2d 327, 329 (App. Div. 1993).

6

three years. *See* N.Y. C.P.L.R. § 214(4); *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 29 (App. Div. 2009). For such a claim, "accrual occurs when the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Kronos, Inc. v. AVX Corp.*, 595 N.Y.S.2d 931, 934 (1993). Amersham began purchasing CyDye products from PerkinElmer no later than October 7, 1999, on which date Enzo's chief executive officer warned Amersham that Amersham's purchase of CyDye products from PerkinElmer "deprived Enzo of its contractual rights and revenues." (Elliott Decl. Ex. 159 at 3; Wolf Decl. Ex. 34 at 3, 5.) This activity – which Enzo's chief executive openly acknowledged on October 7, 1999 – comprises the sum and substance of Enzo's tortious interference claim in the SAC. Therefore, Enzo's claim would have accrued, if at all, no later than October 7, 1999 – making the claim untimely when Enzo filed the Complaint on October 23, 2002. Moreover, Enzo cannot save its claim from time bar by alleging that Amersham continued to interfere with Enzo and PerkinElmer's contract after October 7, 1999 (*see, e.g.*, Tr. at 41:2–9), because tortious interference is not a "continuing tort." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 258 (S.D.N.Y. 2012) (quoting *Spinap Corp., Inc. v. Cafagno*, 756 N.Y.S.2d 86, 87 (App. Div. 2003)). Therefore, this claim is time-barred.

Nevertheless, even if Enzo's claim were timely, there is no record evidence that would raise this purported breach of contract to the level of a tort. Among other things, Enzo is required to show that Amersham acted "with the sole purpose of harming [Enzo], or, failing that level of malice, use[d] dishonest, unfair, or improper means." *Goldhirsh Group*, 107 F.3d at 108–09. That is, the record must reflect something more than mere contract breach in order to support a claim for tortious interference. *See Rella v. N. Atl. Marine*, No. 02 Civ. 8573 (GEL), 2004 WL 1418021, at *5 (S.D.N.Y. June 23, 2004). Enzo fails to carry this burden. Its opposition brief focuses solely on whether Amersham acted with intent – *i.e.*, the absence of mistake or inadvertence – which is wholly distinct from the element of bad faith. *See Goldhirsh Group*, 107 F.3d at 108–09. Here, there is no evidence that Amersham sought to harm Enzo or used dishonest, unfair, or improper means to contract with PerkinElmer. This gap in the record is fatal to Enzo's claim for tortious interference. Accordingly, because there is no evidence in the record from which a reasonable inference could be drawn as to the third element of Enzo's tortious interference claim, summary judgment would be warranted even if the claim were timely.

### C. Unfair Competition

#### 1. State-Law Claim

Enzo next asserts that Amersham's business interactions with Applied Biosystems and PerkinElmer constituted unfair competition under New York common law. "'The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (quoting *Rosenfeld v. W.B. Saunders, a Div. of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 249–50 (S.D.N.Y. 1990)) (brackets, quotation marks, and citation omitted). Specifically, claims for unfair competition require a twofold showing: "'(1) either actual confusion or a likelihood of confusion [as to the origin of a product];

7

and (2) bad faith [misappropriation] on the part of the defendant.'" *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 444 (S.D.N.Y. 2011) (quoting *SLY Magazine, LLC v. Weider Publ'ns LLC*, 529 F. Supp. 2d 425, 442–43 (S.D.N.Y. 2007), *aff'd*, 346 F. App'x 721 (2d Cir. 2009)).

a. Amersham and Applied Biosystems

Here, Enzo first alleges that Amersham conspired with Applied Biosystems and, as a result, refused to negotiate an amendment to the Agreement with Enzo, thereby misappropriating Enzo's patents by improper means. (SAC ¶ 74(a).)

As an initial matter, this claim fails because it seeks to vindicate a property interest that an unfair competition claim is incompetent to address. Enzo alleges that Amersham and Applied Biosystem's conspiracy resulted in the misappropriation of Enzo's patents. (SAC ¶ 74(a).) The Second Circuit and the Supreme Court have made clear, however, that "states cannot, under the guise of regulating unfair competition, grant what is in effect patent protection . . . ." *Flexitized, Inc. v. Nat'l Flexitized Corp.*, 335 F.2d 774, 783 n.4 (2d Cir. 1964) (citing *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964)); *accord Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204 (2d Cir. 1979). Because Enzo seeks only to protect its patents from misappropriation, its state-law claim for unfair competition is preempted by federal patent law.

Even if this claim were cognizable under state law, it would still fail because the record does not substantiate the unfair conduct Enzo alleges. Enzo identifies no evidence of the alleged conspiracy between Amersham and Applied Biosystems to block the would-be amendment to the Agreement. Indeed, the only link between Applied Biosystems and Amersham is evidence that Amersham hesitated to enter into the amendatory agreement due, in part, to a potential conflict that the amendment would have raised with Amersham's prior contractual obligations to, among others, Applied Biosystems. (*See* 56.1 Stmt. ¶ 16; Wolf Decl. Ex. 14 (letter from Amersham to Enzo setting forth potential amendatory terms); Ex. 18 (letter from Amersham explaining its "position on the main outstanding issues" with respect to amending the Agreement, including its "commitments to third parties that [it] could breach if" the amendment did not include a sub-license for CyDye products); Elliott Decl. Ex 142 (deposition of Anthony Rollins) at 313:5–25 (describing a potential commitment to Applied Biosystems in conflict with the proposed amendment).) From this bare evidence, Enzo makes the wild and unsupported inference of a conspiracy between Amersham and Applied Biosystems, which no reasonable fact finder could credit.

Additionally, Enzo does not show why Amersham should be held liable for declining to enter into the amendatory agreement. The parties do not dispute that Enzo and Amersham never finalized the amendment (56.1 Stmt. ¶ 15), and Amersham had no legal duty to finalize a follow-on agreement, *see Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985); *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74–75 (2d Cir. 1984). Moreover, where "'no agreement exists, either in principle or in fact, there is no duty to negotiate . . . that can be enforced against a party to the negotiations.'" *Mendez v. Bank of Am. Home Loans Serv., LP*, 840 F. Supp. 2d 639, 653 (E.D.N.Y. 2012) (quoting *Frutico S.A. de C.V. v. Bankers Trust Co.*, 833 F. Supp 288, 300 (S.D.N.Y. 1993)). In short, there is no tort

8

for merely declining to enter or amend a contract.

In sum, Enzo seeks to protect property that an unfair competition claim cannot protect and it adduces no evidence to support its allegations of unfairness. Accordingly, the Court grants summary judgment in favor of Amersham with respect to Enzo's claim arising out of the relationship between Amersham and Applied Biosystems.

### b. Amersham and PerkinElmer

The SAC also alleges that Amersham engaged in unfair competition by purchasing CyDye products from PerkinElmer for the purpose of commercial development and exploitation. (SAC ¶ 74(b).) This claim simply recasts Enzo's tortious interference claim and is likewise untimely.

Like a tortious interference claim, a claim for unfair competition is subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(4); *Zinter Handling, Inc. v. Gen. Elec. Co.*, 956 N.Y.S.2d 626, 630 (App. Div. 2012); *see also Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, 126 F. App'x 507, 509 (2d Cir. 2005) ("The statute of limitations for an unfair competition claim based on misappropriation of another's labors or expenditures is three years.") (citations omitted). And like a tortious interference claim, unfair competition is not a continuing tort. *Sporn v. MCA Records, Inc.*, 451 N.Y.S.2d 750, 751 (App. Div. 1982). Therefore, this claim, which is based on the same conduct as Enzo's untimely tortious interference claim, is time-barred. Accordingly, the Court grants summary judgment for Amersham on this claim.

### 2. Federal Claim – Lanham Act

Finally, Enzo argues that Amersham engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). This federal cause of action does not support Enzo's theory.

"Section 43(a)(1)(A) of the Lanham Act makes actionable any commercial representation that is likely to cause confusion 'as to the origin' of goods." *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1125(a)(1)(A)). The Supreme Court has held that the "'origin' of 'goods' . . . is the producer of the tangible product sold in the marketplace. . . . [A]s used in the Lanham Act, the phrase 'origin of goods' is . . . incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31–32 (2003). That is, "the author of ideas . . . is not the origin of goods" if the author is not also producing those goods in tangible form. *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007) (quotation marks and citation omitted).

Enzo argues that Amersham "reverse passed off" Enzo's goods as its own. (Opp. at 22.) In other words, Enzo claims that Amersham misrepresented to consumers that Enzo's goods were Amersham's, which would be a violation of Section 43(a)(1)(A) of the Lanham Act. *Syngenta Seeds, Inc. v. Delta Cotton Co-op. Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006). Notably, Enzo never specifies which goods Amersham reverse passed off. (SAC ¶¶ 77–81; Opp. at 8–9, 22–23.) Just as importantly, though, Enzo acknowledges that it did not produce the tangible goods in question here – whatever they are. Rather, Enzo concedes that it was "the author of the *concepts* embodied" in the

9

products, and it had a distribution contract with Amersham by which Amersham would manufacture the products and distribute them.  (Opp. at 22–23 (emphasis added).)  This concession is fatal to Enzo's claim under Section 43(a) of the Lanham Act.  Put simply, Enzo is not a producer; to the contrary, it is precisely the sort of "author of ideas" that Section 43(a) does not protect.  *Silverstein*, 522 F. Supp. 2d at 601.  Accordingly, the Court grants summary judgment in favor of Amersham with respect to Enzo's Lanham Act claim.

### IV.  REMAINING PATENT CLAIMS

Having resolved the remaining non-patent claims, the Court also concludes that there are no patent claims remaining in this case.  At a conference on February 7, 2005, Judge Sprizzo set the deadline for infringement contentions:  "[I]f there's going to be any amended [infringement contention], it [must] be done in 30 days from today.  Then after, I will not entertain anything further . . . [because] I have to know for my own benefit what I'm going to be asked to . . . resolve[]."  (Wolf Decl. Ex. 21 at 10:11–16.)  Judge Sprizzo then ordered Enzo to finalize its list of infringement contentions by March 9, 2005.  (Doc. No. 124.)  On the appointed date, in addition to properly listing the infringement contentions that the Court resolved in its September 24, 2012 Order, Enzo provided a list of "products [that] may infringe one or more claims from the patents-in-suit . . . [but for which] Enzo is unable to provide a limitation-by-limitation analysis."  (Wolf Decl. Ex. 23 at 21.)  Enzo never accused these products of infringement, and as late as September 2013, Enzo stated only that it "believes that the Products-at-Issue *may* infringe at least one claim of each" of its patents.  (Doc. No. 328 (emphasis added).)

At this stage, the Court will not allow Enzo an opportunity to chase down infringement theories that it failed to pursue but that it now believes *may* bear fruit.  This accords with Judge Sprizzo's ruling in October 2006 that he was "not about to have the theory of the case shift to new items and new claims that were not asserted in the original complaint or that were not part of the *Markman*" proceedings in 2005 and 2006.  (Wolf Decl. Ex. 27 at 25:10–12.)  Indeed, when Enzo explained that it wished to "come up with new products" to accuse, Judge Sprizzo replied:

> You [can] file a new complaint, but this case will not be delayed while you do that. . . .  Now you want to allege different products are infringing[?]  That is a new or supplemental complaint.  That is not part of this case.  If you want to make a motion for leave to amend, you have to follow the rules.  You have to demonstrate that you could not with any reasonable basis have asserted them sooner and that [Defendants] will not be prejudiced by this assertion of these new claims at this late stage of the proceedings after three years . . . .

(*Id.* at 25:21–26:13.)  Judge Sprizzo's admonition has even more force today, seven years later.  If Enzo wishes to try new theories and search for new facts, it may do so only by commencing a new action, although, at this point, such an action would almost certainly be time-barred.

### V.  CONCLUSION

For the reasons stated above, Amersham's motion for summary judgment on Enzo's non-patent claims is GRANTED.  Accordingly, the Clerk of the Court is respectfully directed to terminate the motion

10

pending at Doc. No. 307. Additionally, given the Court's prior ruling granting summary judgment on all of Enzo's patent claims against Amersham, the Clerk of the directed to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: October 22, 2013
       New York, New York

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-22-13

Plaintiffs are represented by Michael Burrows, Scott J. Borenstein, Richard C. Pettus, Jeffrey R. Mann, and John J. Elliott, of Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Victor H. Polk, Jr., of Greenberg Traurig, LLP, One International Place, Boston, Massachusetts 02110.

Defendant Amersham is represented by Maxwell Preston of Arnold & Porter LLP, 399 Park Avenue, New York, New York 10022; Matthew M. Wolf of Arnold & Porter LLP, 555 Twelfth Street, NW, Washington, DC 20004; and Jennifer A. Sklenar of Arnold & Porter LLP, 777 South Figueroa Street, Los Angeles, California 90017.

11